FILED

2021 Sep-16  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| JAMAL PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00662-JHE |
| | ) | |
| ANDREW SAUL, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Jamal Porter ("Porter") seeks review, pursuant to 42 U.S.C § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commission"), denying his application for Supplemental Security Income ("SSI"). (Doc. 1). Porter timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I. Factual and Procedural History

Porter filed his application for a period of SSI on April 11, 2017, alleging he became unable to work beginning March 29, 2017. (Tr. 168-72). The State Agency initially denied his claims on July 7, 2017. (Tr. 94-98). Thereafter, Porter filed a written request for a hearing (Tr. 101-03), and on March 7, 2019, Porter appeared and testified. (Tr. 49-77). After the hearing, the Administrative

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

Law Judge ("ALJ") denied Porter's claim on April 25, 2019. (Tr. 44). Porter sought review by the Appeals Council, but it declined his request on March 19, 2020. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. (Tr. 31-44). On May 11, 2020, Porter initiated this action. (*See* doc. 1). Porter was forty-one-years-old on March 29, 2017, his alleged disability onset date, and on April 11, 2017, his application date. (Tr. 168-72). Porter dropped out of high school but later earned his GED. (Tr. 55).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id*.

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227,230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches

---

[2] In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate parallel statutes and regulations exists for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ failed to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornellius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a sever impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on the grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope* 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id*.

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Porter had not engaged in substantial gainful activity since April 11, 2017, the application date. (Tr. 36). At Step Two, the ALJ found Porter has the following severe impairments: major depressive disorder, recurrent, with psychotic features. (*Id.*). At Step Three, the ALJ found that Porter did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (Tr. 37).

Before proceeding to Step Four, the ALJ determined Porter's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a). The ALJ determined Porter had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> He is limited to unskilled work, which is simple, repetitive, and routine. His supervision must be simple, direct, concrete, predictable, and non-inflammatory. Interpersonal contact with coworkers and supervisors must be incidental to the work performed, *e.g.*, assembly work, but he must not be required to work at fast-paced production line speeds. He should have no contact with the general public.

He should have only occasional, well-explained, and gradually-introduced workplace changes. He must have normal, regular work breaks at least every two hours, and he will miss one day per month for psychological symptoms.

(Tr. 39-42).

At Step Four, the ALJ determined Porter is capable of performing past relevant work as a general farmworker II. (Tr. 42). Alternatively, the ALJ made a Step Five determination that, based on Porter's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Porter could perform. (Tr. 42-43). Therefore, the ALJ concluded Porter has not been under a disability and denied his claim. (Tr. 43).

**V. Analysis**

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citations omitted).

Porter challenges the Commissioner's decision on two grounds: (1) the ALJ erred when discounting opinions from Dr. Martha Kennon, an examining consultative psychologist, and (2) the Appeals Council erred when it wrongly held the additional evidence submitted did not show a reasonable probability that it would change the outcome of the decision. (Doc. 15 at 25-40).

**A. Whether the ALJ Properly Rejected the Opinions of Dr. Martha Kennon, an Examining Consultative Psychologist**

Porter contends the ALJ wrongfully rejected Dr. Kennon's opinions without showing good cause or providing, with at least "some measure of clarity," grounds for repudiation. (Doc. 15 at

5

2). Porter argues the ALJ substituted his own opinion for that of the Commissioner's medical expert. (*Id*.).

In evaluating claims filed after March 27, 2017 (such as this one), the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). Furthermore, the ALJ must articulate his consideration of all medical opinions; there is no longer a mandate of particularized procedures that the ALJ must follow in considering opinions from treating sources. 20 C.F.R § 416.927c(2); 416.920c(b). Rather, the ALJ focuses on the persuasiveness of the opinion using five factors: (1) supportability; (2) consistency; (3) relationship with claimant, including the length, purpose, and extent of the treating relationship, the examining relationship, and the frequency of examinations; (4) specialization, and (5) other factors that support or contradict the opinion or finding. 20 C.F.R. § 416.920c(a)-(c).

The ALJ must articulate how persuasive he found all of the medical opinions and findings based on their consistency and supportability, but he is only required to explain how he considered other factors if he finds two or more conflicting, equally persuasive medical opinions or findings about the same issue. 20 C.F.R. § 416.920c(b)(2,3). The ALJ considers a medical opinion to be inconsistent if it conflicts with other evidence or contains internal conflict. 20 C.F.R. § 416.920b(b). "Inconsistencies between a medical opinion and objective medical evidence can justify an ALJ's decision to disregard the medical opinion. *Morgan v. Commr. Of Soc. Sec.*, 760 Fed. Appx. 908, 911 (11th Cir. 2019) (citations omitted). The Commissioner must also evaluate the supportability of medical opinions based on "the objective medical evidence and supporting explanations" provided by the medical source. 20 C.F.R. § 416.920b(c)(1). Finally, the ALJ is not

required to "provide any analysis about how [he] considered such evidence in [his] determination or decision." 20 C.F.R. § 416.920b(c).

Here, the ALJ found Dr. Kennon's medical opinion was only partially persuasive. (Tr. 41). The ALJ found Dr. Kennon's opinion lacked support and was both internally inconsistent and inconsistent with other record evidence. (Tr. 40-41). At the conclusion of her State Agency mental status examination on May 30, 2017, Dr. Kennon offered her medical opinion about Porter's limitations. (Tr. 386-91). Specifically, Dr. Kennon reported Porter was able to understand and perform instructions but may not remember them. (Tr. 391). The ALJ found this opinion was "not entirely consistent with the memory findings on her mental status examination." (Tr. 41). On a test of his cognition, Porter performed serial sevens without mistake. (Tr. 390). On a test of his immediate memory, Porter recalled six digits forward and three digits backwards. (*Id*.). On a test of his recent memory, Porter adequately recalled his activities from the previous day. (*Id*.). Lastly, on a test of his cognition, Porter recalled his family's birthday, own birthday, age, address, telephone number, and the name of his high school. (*Id*.). There is no indication in the record to support how Dr. Kennon concluded that Porter could not remember instructions. (*See* tr. 386-91). Substantial evidence supports the ALJ's determination that Dr. Kennon's opinion regarding Porter's memory was unsupported and inconsistent.

Dr. Kennon also opined that Porter was "likely not able to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public." (Tr. 391). However, the ALJ found that Dr. Kennon's opinion was neither supported by nor consistent with her observation that Porter maintained okay demeanor, age-appropriate behavior, and a normal thought process. (Tr. 40-41) (citing tr. 391). Porter also told Dr. Kennon that he had a girlfriend. (Tr. 389). Dr. Kennon does not point to any evidence or explain why she concluded

that Porter is unlikely to maintain effective social interaction. (*See* tr. 386-91). Substantial evidence supports the ALJ's determination that Dr. Kennon's opinion regarding Porter's social interaction was unsupported and inconsistent.

Next, Dr. Kennon opined that Porter was "likely unable to deal with normal pressures in a competitive work setting." (Tr. 391). The ALJ found that Dr. Kennon's opinion was inconsistent with the findings of Dr. Eugene E. Fleece, a State consultative psychologist. (Tr. 41). Unlike Dr. Kennon, Dr. Fleece provided in-depth explanations to detail how his medical findings and knowledge supported his opinion. (Tr. 86-91, 388-91). For example, after reviewing Dr. Kennon's report, Dr. Fleece aversely opined that normal workplace pressures "would be relatively low amplitude compared to those [pressures] which would face him day to day out in the community" after considering his registered sex offender status. (Tr. 86). Accordingly, substantial evidence supports the ALJ's determination that Dr. Kennon's opinion regarding Porter's ability to deal with normal pressures in a competitive work setting was unsupported and inconsistent.

Based on the inconsistencies and lack of supportability explained above, the ALJ correctly evaluated the evidence from Dr. Kennon when he found her opinions were only partially persuasive. (Tr. 40-41).

### B. Whether the Appeals Council Properly Denied Review and Remand of Plaintiff's Claim after His Submission of New Evidence

Porter also contends the Appeals Council wrongfully denied review and failed to remand his claim when it held that his additional evidence did not show a reasonable probability of changing the outcome of the ALJ's decision. (Doc. 15 at 25).

"If [a plaintiff is] dissatisfied with the decision of the administrative law judge, [he] may request that the Appeals Council review the decision." 20 C.F.R. § 416.1400. On review, the Appeals Council will consider additional evidence if the claimant had good cause for not informing

the commissioner about or submitting the evidence. 20 C.F.R. § 416.1470. Additionally, the evidence must be new, material, and chronologically relevant and there must be "a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *Clark v. Soc. Sec. Administration*, *Commr.*, 848 Fed. Appx. 858, 861(11th Cir. 2021) (unpublished) (citations omitted); *see Griffin v. Soc. Sec. Administration*, *Commr.* 842 Fed. Appx. 339, 341 (11th Cir. 2021) (unpublished) (citations omitted) (emphasis added).[4]

In this case, the ALJ notified Porter of his unfavorable decision on April 25, 2019. (Tr. 31). On review, Porter submitted two additional records from June Nichols, Psy.D: one dated August 26, 2019 (tr.13-17) and the other dated September 3, 2019 (tr. 12). (Tr. 165). The Appeals Council, after reviewing Dr. Nichols' records, determined there was no reasonable probability the additional evidence would change the outcome. (Tr. 2).

### 1. Dr. Nichols' August 2019 psychological evaluation

Porter submitted "Psychological Evaluation" from Dr. Nichols dated August 2019, to the Appeals Council. (Tr. 13-17). After denying review, the Commissioner stated "[the] additional report had no reasonable probability of affecting the outcome of the ALJ's decision because it did not diminish or contradict the ALJ's decision, and because the report lacked an attention to detail and was contradictory." (Doc. 17 at 23-24) (citations omitted).

Additional evidence may be given little to no weight when it is inconsistent and reinforces the ALJ's decision. *See Clark v. Soc. Sec. Admnistration, Commr.*, No. 20-12771, 2021 WL 855711 (11th Cir. Mar. 8, 2021). Additional evidence must tip the scale of substantial evidence in favor of the claimant in order for the Appeals Council to properly review a claim. *See id*. "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant

---

[4]Porter's argument that the Appeals Council should have used a reasonable "probability" standard instead is unfounded. (Doc. 15 at 29)

evidence [that] a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004) (quotations omitted).

Some of Dr. Nichols' opinions were unsupported by her own records. (Tr. 13-17). Specifically, Dr. Nichols reported Porter presenting as a "neat and clean individual." (Tr. 15). However, she also concluded that Porter would have "difficulty being able to adhere to basic standards of neatness and cleanliness," without offering a rationale for her conclusion. (*See* tr. 13-17). Dr. Nichols also reported Porter gave good eye contact, had clear and normal speech rate, held conversation pace within normal limits, and cooperated during the evaluation. (Tr. 15-16). Then, Dr. Nichols later opined Porter "cannot maintain socially appropriate behavior." (Tr. 17). Again, Dr. Nichols failed to offer a rational for her conclusion. (*See* tr. 13-17). The lack of support for these opinions, as demonstrated by the contradictory records, is substantial evidence to support the Appeal Council's determination that Dr. Nichol's opinion regarding Porter's level of social interaction did not have a reasonable probability of changing the outcome of the decision.

Additionally, during her evaluation, Dr. Nichols' diagnosed Porter with "Major Depression Disorder, Recurrent, Severe, with Psychotic Features" (tr. 17), and the ALJ had already acknowledged this diagnosis (tr. 391). Dr. Nichols opined that Porter would not be able to "maintain attention, concentration and/or pace for periods of at least 2 hours…[or] sustain an ordinary routine without special supervision." (*Id*.). Dr. Nichols, in fact, furthered her opinion by stating that Porter "would have a difficult time adjusting to routine or infrequent work changes." (*Id*.). Comparably, the ALJ had already limited Porter to "unskilled work, which is simple, repetitive and routine" with regular work breaks at least every two hours. (Tr. 39). The ALJ, accounting for special supervision, found that Porter's supervision must be "simple, direct, concrete, predictable, and non-inflammatory." (*Id*.). Because these opinions were already

accounted for, substantial evidence supports the Appeal Council's determination that Dr. Nichol's opinion regarding Porter's work-related restrictions did not have a reasonable probability of changing the outcome of the decision.

### 2. Dr. Nichols' September 2019 mental health source statement

Porter also submitted a "Mental Health Source Statement" from Dr. Nichols dated September 2019, to the Appeals Council. (Tr. 12). This document consisted of questions with yes-or-no and two fill-in-the-blank answers. (*Id.*).

This court, and others, have "criticized 'form reports' . . . where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision." *Ferguson v. Soc. Sec. Administration, Commr.*, 4:19-cv-1393-HNJ, 2020 WL 4346772, at *5 (N.D. Ala. July 29, 2020) (citing *Wilkerson ex rel. R.S. v. Astrue*, No. 2:11-cv-2556-LSC, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings")). Still, a check-off formatted document with limited space for an explanation is not a basis, in itself, to discount as conclusory. *Schink v. Commr. of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019). The ALJ must interpret answers to the questionnaire in light of the doctor's treatment notes. *Id.*

In this case, Dr. Nichol's answers in her mental health source statement include no analysis or explanation and are occasionally contradictory. (Tr. 12). Dr. Nichols answered "Yes" that Porter was able to "understand, remember, or carry out very short and simple instructions". (*Id.*). However, on the same document, she circled "No" that Porter was unable to: maintain attention, concentration and/or pace for periods of at least two hours, perform activities within a schedule and be punctual within customary tolerances; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; interact with supervisors and/or co-

workers, or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*). Nichols also opined Porter would be off task 30-40% of the time during an 8-hour day and miss 20-25 days in a 30-day period. (*Id.*). Lastly, Dr. Nichols circled "Yes" to indicate that Porter's limitations existed during March 29, 2017. (*Id.*). Such unexplained, conclusory responses have little probative value. *Ferguson*, 2020 WL 4346772, at *5.

Even when interpreted in light of Dr. Nichols' August 2019 report, her September 2019 mental health statement remains unsupported. (Tr. 12-17). For example, as discussed above, Dr. Nichols stated Porter "presented as a neat and clean individual" in August but circled "No" to indicate that he could not adhere to basic standards of neatness and cleanliness in September. (*Id.*). Dr. Nichols stated Porter cooperated with the evaluation, maintained good eye contact, spoke normally, and displayed clear stream of consciousness and a normal conversation pace in August, but she circled "No" to reflect that he could not maintain socially appropriate behavior in September. (*Id.*).

The lack of explanation and inconsistency in the September 2019 mental health source statement constitutes substantial evidence to support the Appeals Council's finding that Dr. Nichol's September 2019 document had no reasonable probability of changing the outcome of the ALJ's decision.

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Porter's claim for Supplemental Security Income is **AFFIRMED,** and this action **DISMISSED.**

DONE this 16th day of September, 2021.

_____

**JOHN H. ENGLAND, III**

UNITED STATES MAGISTRATE JUDGE